# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| VICKI B. MILLER | : | DOCKET NO. 05-1859 |
| --- | --- | --- |
| VS. | : | JUDGE TRIMBLE |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On August 20, 2003, Vicki B. Miller protectively filed a claim for Disability Insurance Benefits. (Tr. 47-50). She alleged an inability to work since May 1, 2001,[1] due to inability to concentrate, panic attacks, inability to sit still, and lethargy. (*See*, Tr. 47-49, 52). The claim was denied at the initial level of the administrative process. (Tr. 23, 34-37). Thereafter, Miller requested, and received a January 6, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 122-144). However, in a February 15, 2005, written decision, the ALJ determined that

---

[1] At the hearing, the alleged onset date was amended to June 30, 1996. (Tr. 124-125).

Miller was not disabled under the Act, finding at Step Five of the sequential evaluation process that she could make an adjustment to work that exists in significant numbers in the national economy. (Tr. 11-18). Miller appealed the unfavorable decision to the Appeals Council. Yet, on August 12, 2005, the Appeals Council denied Miller's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

Miller now seeks to have this court review the denial of benefits. She alleges the following errors:

(1) the ALJ failed to give proper weight to the opinion of plaintiff's treating physician; and

(2) the vocational expert testimony is based on a defective hypothetical.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) &

1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issues 1-2**:

At Step Two of the sequential evaluation process, the ALJ determined that Miller suffered from severe impairments of bipolar disorder, panic attacks, anxiety, and agoraphobia.

3

(Tr. 13, 18).[2] However, the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (18, 23). *Id.* The ALJ then found that Miller retained the residual functional capacity for light work reduced by the inability to work well with the general public and a limitation to understanding, remembering, and carrying out simple tasks. (Tr. 16).[3] Plaintiff contends that the ALJ failed to credit the opinion of her treating physician.

Plaintiffs' mental impairments were evaluated by two physicians of record. The first was a consultative examination by Ronald J. Lowell, M.D. on August 20, 1997. (Tr. 85-102). Dr. Lowell noted that in 1995, Miller was sexually assaulted by an examining healthcare professional. *Id.* However, she did not miss significant work time a result. *Id.* In 1996, Miller quit her job when her husband was transferred to Louisiana. *Id.* Miller's medical history indicated that she had been diagnosed with agoraphobia in 1988. *Id.* After the sexual assault incident, Miller began to experience a great deal of fear, fright, and anxiety. *Id.* She was afraid

---

[2] The ALJ further found that plaintiff had a left shoulder impairment. (Tr. 13). However, he determined that the impairment was non-severe. *Id.* Plaintiff has not challenged this determination.

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

of being alone. *Id*. Plaintiff stated that she wanted to return to work. *Id*. Dr. Lowell conceded that it was difficult to assess Miller's underlying personality in the one interview. *Id*. He opined that Miller had recently become emotionally disabled. *Id*. Dr. Lowell further opined that plaintiff was temporarily totally disabled at that time. *Id*. His prognosis was a return to her baseline, and likely no significant permanent psychiatric impairment on an industrial basis other than the need to avoid work at medical clinics or around men that reminded her of her sexual assault. *Id*. Vocational rehabilitation services seemed indicated. *Id*.

On February 11, 2004, plaintiff's treating physician, Nguyen Nguyen, M.D., wrote a letter to plaintiff's attorney. (Tr. 110-111). He stated that Miller had been under his care since July 31, 2003, when she was admitted to the hospital. *Id*.[4] He stated that her mental condition with a period of mania, psychosis, and disorganized thinking seriously impaired her physical condition and her total functioning. *Id*. He further stated that Miller had been compliant with her medication and office appointments since her discharge from the hospital. *Id*. The mania and psychosis had improved. *Id*. However, she still experienced severe depression, severe anxiety, and recurrent panic attacks. *Id*. Her thought disorder had also improved, but the anxiety, panic attacks, and depression still persisted. *Id*. Dr. Nguyen noted that Miller had a long history of bipolar disorder and had been treated by at least six previous psychiatrists before seeing Dr. Nguyen. *Id*. He explained that Bipolar I Disorder with psychosis was a chronic mental illness, which required long term treatment with psychotropic medications, monitoring possible side effects, and supportive therapy. *Id*. Nguyen opined that Miller's prognosis was poor. *Id*. Miller's last office visit was on January 15, 2004. *Id*. He noted that plaintiff experienced poor

---

[4] Plaintiff was hospitalized due to severe dehydration and to rule out lithium toxicity. (Tr. 117-118). She was diagnosed with bipolar I disorder with psychosis and panic attacks. *Id*. Her GAF upon admission was 20, and 65 upon discharge. *Id*.

5

concentration, very poor social life and adaptation, and significant impairment of concentration and attention. *Id*. He opined that Miller was not suitable for employment at that time. *Id*. She needed continued mental treatment, with medication and supportive therapy. *Id*.

On February 3, 2005, Dr. Nguyen completed a Mental Residual Functional Capacity Assessment ("RFC"). (Tr. 119-121). He indicated that most activities were markedly limited. *Id*.[5]

Obviously, Dr. Nguyen's February 14, 2004, letter and subsequent mental RFC assessment are irreconcilable with the ALJ's residual functional capacity assessment. Accordingly, the ALJ made some effort to discount Dr. Nguyen's records. For instance, the ALJ noted that there were no medical records from Dr. Nguyen after January 2004. (Tr. 16). Yet, at the January 6, 2005, hearing, plaintiff testified that she was seeing Dr. Nguyen for her impairment, and that her last office visit had been in November 2004. (Tr. 129, 139). Moreover, unbeknownst to the ALJ, Dr. Nguyen had assigned marked limitations of functioning in several mental activities only one week before the ALJ's decision. (Tr. 119-121).

In his determination, the ALJ attempted to rely on Dr. Lowell's 1997 evaluation.[6] Dr.

---

[5] The ALJ did not address the February 3, 2005, mental RFC assessment, apparently because it was presented to the Appeals Council in the first instance. (*See*, Tr. 3, 7). The parties do not address whether we may properly consider this new evidence. Yet, recently in another case involving the same counsel for plaintiff, the Commissioner conceded that evidence presented initially to the Appeals Council constitutes part of the record for judicial review and must be considered in our review of the final administrative decision – provided that the new evidence relates to the relevant time period. *Foshee v. Barnhart*; C. A. No. 05-1320 [doc. # 15] (W.D. La.)(citing, *Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005). Here, there is no question that the new evidence relates to the relevant period because it addressed claimant's condition prior to the ALJ's decision.

[6] Despite acknowledging that a nurse was not an "acceptable medical source," the ALJ also relied on a nurse's observations that Miller was able to understand and remember things. (Tr. 15, 113). However, the nurse's observations must defer to the evaluation and impressions of the patient's treating physician.

6

Lowell opined that at the time of her evaluation, Miller was disabled, but that he anticipated that her condition would improve. (Tr. 85-102).[7] Miller's condition may indeed have improved after 1997 (due to the lack of medical records between 1997 and 2003). Yet, by 2003, the uncontroverted medical evidence indicates that her condition had deteriorated.

In sum, neither Dr. Lowell nor Dr. Nguyen provide substantial evidence to support the ALJ's residual functional capacity assessment. The record remains otherwise devoid of medical assessments of the limitations caused by plaintiff's impairments. Without a supporting medical assessment or other corroborating evidence, the ALJ's residual functional capacity determination is not supported by substantial evidence. *See, Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004)(unpublished)(in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

Because the foundation for the ALJ's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, we necessarily find that the ALJ's ultimate conclusion that plaintiff was not disabled is also not supported by substantial evidence.

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(c), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.

---

[7] Of course, by the time of the ALJ's decision, Dr. Lowell's one-time evaluation was over seven years old.

7

Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on July 18, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE